**Susan JAEGER, Plaintiff,**

v.

**MATRIX ESSENTIALS, INC, et al., Defendants.**

**No. 1:01CV0544.**

United States District Court, N.D. Ohio, Eastern Division.

Aug. 29, 2002.

William C. Barker, Leslie A. Dent, Rebecca D. Farber, Katherine F. Glennon, Paul, Hastings, Janofsky & Walker, Atlanta, GA, Thomas H. Barnard, Jr., Kendra J. Eason, Ulmer & Berne, Cleveland, OH, for L'Oreal.

William C. Barker, Leslie A. Dent, Rebecca D. Farber, Katherine F. Glennon, Paul, Hastings, Janofsky & Walker, Atlanta, GA, Thomas H. Barnard, Jr., Ulmer & Berne, Cleveland, OH, for Matrix Essentials, Inc.

Robert J. Dubyak, Steven B. Potter, Dinn, Hochman, Potter & Levy, Cleveland, OH, for Susan Jaeger.

John B. Lewis, Gregory V. Mersol, Michelle Pierce Stronczer, Baker & Hostetler, Cleveland, OH, for Bristol–Myers Squibb Company.

### MEMORANDUM & ORDER

O'MALLEY, District Judge.

Plaintiff Susan Jaeger ("Jaeger") filed this amended complaint against Defendant corporations Matrix Essentials, Inc. ("Matrix"), Bristol–Myers Squibb Co. ("BMS"), and L'Oreal d/b/a/ Cosmair, Inc. ("L'Oreal") under the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. § 1001 *et. seq.* The Court's jurisdiction is based upon 29 U.S.C. § 1132(e) and 1132(f). Jaeger asserts four causes of action: (1) she is an eligible participant in the benefit plans offered to Matrix employees between 1984 and 1993; (2) she is an eligible participant in the various benefit plans offered by BMS/Matrix and, despite her July 17, 2000 request, has not received any of the benefits offered to employees of BMS/Matrix; (3) BMS/Matrix and L'Oreal/Matrix have failed to provide documents required by 29 U.S.C. § 1021 *et. seq.;* and (4) she is an eligible participant in the various benefit plans offered by L'Oreal,

but has not received any benefits offered to employees of L'Oreal.

Defendant BMS moves for summary judgment on four grounds: (1) Jaeger's request for short and long term disability benefits was properly denied; (2) some or all of Jaeger's claims are barred due to her failure to exhaust administrative remedies; (3) common law employees are not automatically eligible for employee benefits where expressly excluded from such benefits under the relevant plan; and (4) BMS is not liable for a failure to provide plan documents because Jaeger never requested them and was not otherwise entitled to receive them.

Defendants Matrix and L'Oreal move for summary judgment on three grounds: (1) Jaeger was not a participant in L'Oreal/Matrix's benefit plans; (2) Jaeger failed to exhaust her administrative remedies; and (3) L'Oreal/Matrix is not liable for statutory penalties for failure to provide plan documents.

Finally, Jaeger, on a cross-motion for summary judgment, contends that she is entitled to summary judgment on three grounds: (1) she was a participant of the ERISA plans available to her from Defendants Matrix, BMS, and L'Oreal; (2) she was a common law employee at all relevant times; and (3) a L'Oreal employee prevented Jaeger from pursuing her claims and obtaining the necessary information regarding the benefits plans, and failed to forward her request to the plan administrator.

For the reasons stated below, the Court **DENIES** Plaintiff Susan Jaeger's motion for summary judgment and **GRANTS** Defendant Bristol–Myers Squibb Co. and Defendants Matrix and L'Oreal's motions for summary judgment.

## I. Statement of Facts

Matrix hired Susan Jaeger to perform services in 1984. She worked in the Creative Department and performed graphic design services for Matrix until 1993. During this time period, Matrix compensated Jaeger only after Jaeger prepared invoices that were signed by her supervisors. Matrix paid Jaeger through the accounts payable department and issued her an IRS 1099 form at the end of the year to report that income. Beginning in 1988 or 1989, Jaeger's invoices were submitted to Matrix on letterhead reading "Susan Jaeger Graphic Design." Matrix never withheld federal, state, local, or social security taxes, and Jaeger never received an IRS W–2 Form from Matrix for the services she performed. On August 31, 1989, Jaeger wrote a letter to Matrix indicating that she was "self-contracted" and that "I am not entitled to any Matrix employee benefits, and therefore pay my own health and other insurance." Jaeger Dep. Exh. 38. Jaeger contends that Matrix requested that she write the letter and went over the content of the letter with her.

Until 1991, Jaeger worked in an exclusive manner for Matrix. But, in 1991, Jaeger began doing graphic design for other clients, including American Medical Imaging, Adverama, and the Art of Beauty Company. Jaeger hired three other individuals to work on these projects on a freelance basis. Jaeger also submitted invoices to these companies on her letterhead and charged them by the hour, just as she did with Matrix.

Jaeger took time off for medical reasons starting in December of 1993 and continuing throughout most of 1995. While Jaeger was taking this time off, BMS acquired Matrix in 1994 (hereinafter "BMS/Matrix"). In December 1995, BMS/Matrix rehired Jaeger to resume her working relationship with the company. Jaeger began submitting invoices on her letterhead on January 3, 1996, just as she had done before. BMS/Matrix reported its pay-

ments to Jaeger on IRS 1099 forms, and Jaeger recorded those earnings as the profits of a sole proprietorship on her taxes. Jaeger continued to do work in the Creative Department through July 1999. During this time period BMS/Matrix would assign Jaeger work through "work assignment sheets" describing the project, the steps of the project, and a due date. Also at that time, BMS/Matrix assigned Jaeger a computer with a password, gave her an e-mail address, gave her a telephone and a voice mail box, and gave her a building pass to BMS/Matrix's facility. From 1996 until some point in 1998, BMS/Matrix gave Jaeger her own cubicle, but from that point in 1998 until July 1999, she shared an office with Mary Averill. While BMS/Matrix employees generally worked from 9:30 a.m. until 6:00 p.m., Jaeger was permitted to arrive late and/or leave early, as long as her work was completed. During this period, Jaeger rarely worked a 9:30 a.m. to 6:00 p.m. schedule.

Jaeger continued to do work for other clients during this period. She occasionally did work for American Medical Imaging and the Art of Beauty Company in 1994 and 1995. From 1996 to 1999, she also did work for Ferrante Winery, Scott Advertising, Jo–Ann Fabrics, and Third Dimension. With all of these clients, she submitted invoices detailing on which projects she worked and the hours she spent. She received an IRS Form 1099 from each client and reported this income as earnings from her graphic design sole proprietorship on her taxes. Jaeger also claimed various business deductions related to her graphic design work, such as the use of her vehicle, depreciation of her home computer equipment, entertainment, and the cost of part of her home as a home office, on her taxes.

In July 1999, BMS/Matrix dismissed Jaeger as part of a cut-back on contract work. Jaeger claims that BMS/Matrix told her that it would no longer employ freelancers to do its graphic design work. In August 1999, Jaeger contacted Technigraph Media, a client and supplier of Matrix, to seek employment opportunities. At first, they did not have an immediate need for Jaeger's services. But, subsequently, Technigraph contacted BMS/Matrix, and BMS/Matrix felt it would be beneficial to allow Jaeger to work for Technigraph on BMS/Matrix assignments. Technigraph hired Jaeger in late August 1999, and she began working on projects for Matrix at the Technigraph offices. In the last week of October 1999, Jaeger began to report to the Matrix facilities to perform her work. Jaeger continued to work for Technigraph until February 2000. During this time period, Jaeger submitted invoices to Technigraph, who would compensate Jaeger. Technigraph would then bill BMS/Matrix.

In February 2000, Jaeger ceased working for Technigraph and began employment with Olsten Staffing Services ("Olsten/Adecco"),[1] BMS/Matrix's designated temporary services provider, who set up an office within the BMS/Matrix facility. Jaeger was now a paid employee of Olsten/Adecco. Jaeger would submit a weekly time card to Olsten/Adecco that would then be verified by the BMS/Matrix Creative Department business manager Mai Chang. In turn, Jaeger received a W–2 form from Olsten/Adecco. Jaeger did not receive any IRS forms from BMS/Matrix.

During February 2000, Jaeger applied for an open art director position at BMS/Matrix; she withdrew her application for that position, however, when she began to suffer a variety of medical problems. Initially, Jaeger experienced partial vision loss. Eventually, Jaeger experienced fa-

1. Olsten Staffing Services was purchased by Adecco, Inc. in the spring of 2000.

tigue, memory problems, nausea, joint pain, depression, and slurred speech. Jaeger's medical problems improved for a while but eventually became worse, forcing her to stop working in July 2000. Although an MRI in April 2000 indicated that Jaeger may have multiple sclerosis, it was later determined that she did not. Jaeger then developed a belief that she may have Lyme Disease. Despite an earlier negative test for Lyme Disease, Jaeger was diagnosed with Lyme Disease in October 2000.[2]

In June 2000, when Jaeger still did not know the cause of her symptoms, her condition worsened. She was unable to work full time as she had in the past, or to give the necessary attention and care to the projects on which she worked. On July 17, 2000, one week after BMS sold Matrix to L'Oreal (hereinafter "L'Oreal/Matrix"), Jaeger wrote a letter to Nanette Black in the Matrix Human Resources Department. Jaeger Dep. Exh. 4. She explained her illness, the fact that she could not work past July 21, 2000, and asked for benefit information as well. On approximately July 21, 2000, Vickie Liptak, Matrix's Director of Human Resources, spoke with Jaeger and told her that she was not eligible for benefits because she was not an employee of L'Oreal/Matrix. Vickie Liptak did not provide Jaeger with benefit information or plan documents. Jaeger's last day of work at L'Oreal/Matrix was July 21, 2000.

On August 16, 2000, Jaeger's attorney, Steven Potter, wrote a letter to Liptak indicating that he represented Jaeger and that she contends she should be eligible for all of the benefits that were available to employees of BMS and L'Oreal. This letter was forwarded to L'Oreal's in-house counsel, Linda Vogel, who requested further information from Potter. On October 24, 2000, Potter responded to this request, sending copies of case law that he felt supported his position, as well as reiterating his belief that Jaeger was entitled to all of the benefits available to BMS and L'Oreal's employees. Exh. F in Appendix to Defendants' Motion for Summary Judgment. L'Oreal responded to this request on December 12, 2000, when it sent a letter to Potter indicating that the company felt that Jaeger was not eligible for any of these benefits because she was a freelance employee or an independent contractor at all times. Jaeger Dep. Exh. 29.

During the pendency of this lawsuit, Jaeger submitted an application to BMS's Disability Program, seeking both short and long term disability benefits. In a letter dated February 11, 2002, BMS denied her claims on multiple grounds: (1) because BMS sold Matrix to L'Oreal one week prior to her request, she could not satisfy the plan's requirement that the employee be a regular, full-time employee immediately prior to becoming disabled; (2) she was specifically excluded from both plans' coverage because she was not treated as a BMS employee; and (3) she was classified as a temporary employee, which is specifically excluded from both plans' coverage. Exh. A to Jaeger's March 29, 2002 Affidavit. Jaeger has not appealed this determination, despite the letter's indication that she has this right.

## II. Summary Judgment Standard

Federal Rules of Civil procedure 56(c) governs summary judgment motions and provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admis-

---

**2.** Defendants apparently dispute Jaeger's description of her ailments. For purposes of this motion, however, Defendants concede that the Court should assume that Jaeger's characterization of her physical condition is accurate.

sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify in the matters stated therein . . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgement is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III. Law and Analysis

■ The Court "must undergo a two-prong analysis" to determine whether or not an employee is entitled to benefits under ERISA. *Wolf v. Coca–Cola Co.,* 200 F.3d 1337 (11th Cir.2000). The first prong requires that the plaintiff be an "employ-

ee." The second prong requires that the plaintiff be eligible to receive benefits according to the terms of the plan. *Id.* at 1340.

■ Because ERISA only defines an "employee" as "any individual employed by an employer," 29 U.S.C. § 1002(6), the Supreme Court directs courts to employ the common-law test for determining whether an individual is an employee. *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). This common-law test requires the Court to consider thirteen different factors: (1) the hiring party's right to control the manner and means by which the work product is accomplished; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; and (13) the tax treatment of the hired party. *Id.* at 323–324, 112 S.Ct. 1344 (citing *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–752, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)). No one factor is determinative, but rather, "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *NLRB v. United Ins. Co. of America,* 390 U.S. 254, 258, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968). The "underlying common denominator" is "the employer's ability to control job performance and employment opportunities of the aggrieved individual." *Simpson v. Ernst & Young,* 100 F.3d 436, 442 (6th Cir.1996).

The second prong requires that the plaintiff be eligible to receive benefits according to the terms of the plan. Therefore, the second prong becomes "an examination of the terms of the company's ERISA plan." *Wolf,* 200 F.3d at 1340. The plaintiff is required to be eligible under the terms of the plan itself, because companies are not required by ERISA to make their ERISA plans available to all common law employees. *Id.*

■ The standard of review to be used by a court when a plaintiff challenges a benefits determination was set forth in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948 (1989). The Supreme Court held "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* So, as the Sixth Circuit noted in *Wulf v. Quantum Chemical Corp.,* 26 F.3d 1368, 1373 (6th Cir.1994), "a reviewing court should first examine the plan to determine whether or not the required discretion has been given." When a plan expressly gives the plan administrator or fiduciary "discretionary authority," the arbitrary and capricious standard of review is to be used. *Borda v. Hardy, Lewis, Pollard & Page, P.C.,* 138 F.3d 1062, 1066 (6th Cir.1998). But, "discretionary authority" does not hinge on the incantation of "discretion" or any other magic word; it is to be determined from an overall review of the plan. *Johnson v. Eaton Corp.,* 970 F.2d 1569, 1572 (6th Cir.1992). The arbitrary and capricious standard "is the least demanding form of judicial review of administrative action." *Davis v. Kentucky Fin. Cos. Retirement Plan,* 887 F.2d 689, 693 (6th Cir.1989) (citing *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985)).

Under this standard, a plan administrator or fiduciary's decision on eligibility for benefits is not arbitrary and capricious if it is "rational in light of the plan's provisions." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir.1991) (citing *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988)). So, when it is possible to "offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis*, 887 F.2d at 693 (citing *Pokratz*, 771 F.2d at 209).

■ In situations where the plain terms of the plan exclude certain individuals from eligibility under an ERISA plan, no discretion or interpretation is needed, and the arbitrary and capricious standard need not be invoked by the court. For example, the Eighth Circuit in *Fink v. Union Central Life Insurance Co.*, 94 F.3d 489, 491–92 (8th Cir.1996) stated that, although the plan fiduciary's decision should be reviewed under an abuse of discretion standard,[3] it was clear that the individual plaintiff did not work thirty or more hours per week and, therefore, did not meet the plan's full-time eligibility requirement. The Court rested its denial of benefits on the plaintiff's failure to meet the plain terms of "full-time" employment. *Id.* Similarly, in *Clark v. E.I. DuPont de Nemours & Co.*, 105 F.3d 646 (Table), No. 95–2845, 1997 WL 6958 (4th Cir.1997), the Fourth Circuit affirmed a leased employee's exclusion from benefits where leased employees were included in the plan's definition of employees but were excluded elsewhere from eligibility as "participants" under the plain terms of the plan.

## A. Count One—Jaeger Has Failed to Exhaust Her Administrative Remedies with Respect to the Benefits Matrix Offered Its Employees Prior to 1994

In Count I, Jaeger asserts that, despite being an "eligible participant" in Matrix's benefit plans from September 1984 to December 1993, Matrix denied her all of the benefits of these plans. Jaeger, however, failed to request these benefits at any time from Matrix, either prior to its sale to BMS, or afterward.

■ While the statutory language of ERISA does not explicitly require a participant to exhaust her administrative remedies prior to commencing suit in federal court, the Sixth Circuit, as well as nine other Circuits, requires such exhaustion. *Ravencraft v. UNUM Life Ins. Co. of America*, 212 F.3d 341, 343 (6th Cir.2000) (*citing Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453–54 (6th Cir.1991)). There are exceptions to this exhaustion requirement, however. If a participant can show that the administrative process would be futile or inadequate, the Court may excuse the participant's failure to exhaust. *Ravencraft*, 212 F.3d at 344; *Baxter*, 941 F.2d at 453. Ultimately, the decision of whether or not to apply this exhaustion requirement is left to the sound discretion of the Court. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir.1998).

■ In this case, Jaeger failed to request or apply for any of the benefits to which she now claims she was entitled. She has failed to pursue, let alone exhaust, any of her administrative remedies from Matrix with respect to benefit offerings made prior to 1994. The only benefits

---

**3.** The "arbitrary and capricious" standard is synonymous with an "abuse of discretion" standard. *See Lister v. Stark*, 942 F.2d 1183, 1188 (7th Cir.1991) (holding that an attempt to distinguish these two standards would be like "split[ing] semantic hairs"); *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1558 n. 1 (11th Cir.1990) (noting that the two standards of review can be used "interchangeably").

that Jaeger has actually applied for from any entity, short and long term disability, clearly do not apply to the period referenced in Count One, as she admits that she first began feeling the symptoms that ultimately led to her claims in February of 2000, six years after Matrix was sold to BMS.

Moreover, Jaeger has failed to provide any description of the benefit plans that Matrix provided to its employees between 1984 and 1993, or to explain the eligibility requirements for these plans. Without such documentary evidence, the Court cannot make any determination of whether or not Jaeger may, in fact, have been eligible for such benefits. Indeed, the Court has grave doubts that Jaeger was even an employee of Matrix in this time period. Jaeger, in a letter she wrote at the request of Matrix on August 31, 1989, indicated that she self-contracted with Matrix and, as such, was "not entitled to any Matrix employee benefits . . . ." Jaeger Dep. Exh. 38. This letter is consistent with a resume Jaeger created in 1999 in which she indicates that she was a "Free-lance graphic designer" with Matrix from August 1984 to January 1991.[4] Jaeger Dep. Exh. 3. A plaintiff cannot simply rest upon conclusory allegations in a complaint that she is entitled to benefits. Jaeger not only has failed to provide any evidence regarding the benefit plans offered by Matrix prior to 1994, but has created grave doubts that she was even an employee of Matrix at that time.

As Jaeger both has failed to exhaust her administrative remedies in pursuing the benefits to which she claims she is entitled, and has failed to provide any documentation of these benefits or her eligibility, the Court **DISMISSES** Count One of her amended complaint.

## B. Count Two—Jaeger Is Not Eligible Under Bristol–Myers Squibb Co.'s Benefit Plans

Jaeger's claim in Count Two that she was an "eligible participant" in BMS/Matrix's various benefit plans from January 1996 to July 2000 fails on several grounds. While, in her complaint, Jaeger asserts that she was denied all of the benefits provided to BMS/Matrix employees, she has only submitted claims to BMS/Matrix for short and long term disability. As discussed above, Jaeger must exhaust her administrative remedies before commencing suit in federal court. Jaeger has failed to apply for any benefits other than short and long term disability. Even with regards to the short and long term disability benefits, Jaeger has failed to appeal BMS/Matrix's decision, despite the clear language in the February 11, 2002 denial letter from BMS indicating that she has this right. *See* Exh. A to Jaeger's March 29, 2002 Affidavit. Jaeger's failure to apply for other benefits or to appeal the decision denying her short and long term disability benefits is fatal to her claim. Jaeger, moreover, has provided no evidence that such an appeal would be fruitless so as to excuse her lack of exhaustion.[5]

4. This same resume also indicates that, from January 1991 to January 1996, Jaeger worked for her own design firm of Susan Jaeger Graphic Design and, from January 1996 to the present time (sometime in 1999), she again was a "Free-lance graphic designer and print production artist" with Matrix.

5. Jaeger argues that, because BMS/Matrix denied benefits at least partially on grounds that Jaeger was not an "employee" of BMS/Matrix at the time of her alleged disability, absent a

determination by this Court that Jaeger *was in fact* a common law employee, further pursuit of administrative remedies would be futile. The Court rejects this contention. If Jaeger were correct, no employee would ever be required to appeal a negative benefits determination—contending, instead, that immediate resort to the courts was necessary to "correct" the errors in that initial determination. That is not the law. All administrative remedies, including reasonable appeals from initial

Even if the Court were somehow to excuse her lack of exhaustion, Jaeger still would not prevail. Applying the "two-prong analysis" discussed in *Wolf*, Jaeger must both be a "common law employee" under the *Darden* factors *and* be eligible to receive the benefits she is seeking under the terms of BMS/Matrix's ERISA plan. If she fails on either prong, she lacks standing to bring a claim for benefits under BMS/Matrix's ERISA plan. *Clark v. E.I. DuPont de Nemours & Co.*, 105 F.3d 646 (Table), No. 95–2845, 1997 WL 6958 (4th Cir.1997).

 The Court need not make a final determination of whether Jaeger was a common law employee of BMS/Matrix under the *Darden* factors, however, because, even if she were, BMS/Matrix is not required by ERISA to make their ERISA plans available to all common law employees. *Wolf v. Coca–Cola*, 200 F.3d 1337, 1340 (11th Cir.2000). If this were not true, all "common law" employees would be automatically eligible for ERISA benefits. But, ERISA does not impose a limitation on employers, and employers may limit the individuals to whom it offers benefits (even if some such individuals are otherwise "common law" employees). In fact, the only limitation ERISA places on

employers is in forbidding them to "deny participation in an ERISA plan to an employee on the basis of age or length of service if he is at least twenty-one years of age and has completed at least one year of service." *Abraham v. Exxon Corp.*, 85 F.3d 1126, 1130 (5th Cir.1996).

BMS/Matrix falls squarely within the category of employers who have imposed limitations on the benefits available to "common law" employees; it specifically excluded from its benefit plans:

> [a]ll leased employees, as defined in Section 414(n) of the Internal Revenue Code, all independent contractors and all other individuals whom the Employer does not treat as its employees for federal income and employment tax purposes, even if it is subsequently determined by a court or the Internal Revenue Service that such individuals should be, or should have been, properly classified as common law employees of the employer.

Jaeger Dep. Exh. 36—BMS Short Term Disability Plan § 2.1.2 ("BMS STD Plan") & BMS Long Term Disability Plan ("BMS LTD Plan") § 2.1.2. Since the parties agree that Jaeger was never treated as an employee of BMS/Matrix for federal income and employment tax purposes, BMS/Matrix's ERISA plans were not available to her on this ground alone.[6]

benefits determinations, must be exhausted before a claim is ripe for resort to Federal Court. *See, e.g., Ravencraft v. UNUM Life Ins. Co. of America*, 212 F.3d 341, 343 (6th Cir. 2000) (rejecting a plaintiff's claim that resort to the administrative appeals process would be futile simply because the employer filed its denial benefits beyond the ninety-days required by ERISA—"UNUM's actions do not bespeak that it ignored the claim, nor did UNUM fail to give Ravencraft's claim due consideration.").

6. Jaeger contends that, because BMS's summary plan description ("SPD") conflicts with the master agreements cited by BMS, the SPD terms must govern. The SPD states that only a *"regular, full-time employee* who works

at a company location in a job classification that's eligible for this Plan" may be eligible for benefits. Exh. B to Jaeger's May 2, 2002 Affidavit, p. D–8. The SPD defines a regular, full-time employee as "an employee who works a regularly scheduled work-week of at least 25 hours." *Id.*, p. D–12. Jaeger contends that, by virtue of this language, benefits determinations must be based on work hours alone. The Court does not find that the SPD and the master plan conflict. The SPD simply limits eligibility to certain job classifications, which is consistent with the master plan's description; it does not contain language that vitiates other direct requirements of the master plan. Thus, the SPD does not state that tax treatment is irrelevant or that individuals who treat themselves as indepen-

■ Jaeger is also excluded because BMS/Matrix's plan gives the plan administrator the necessary "discretionary authority" to determine the eligibility of individuals to invoke the "arbitrary and capricious" or "abuse of discretion" standard. Although the word "discretion" need not be present to give "discretionary authority" to a plan administrator or fiduciary, BMS/Matrix's plan explicitly uses the word "discretion." To be exact, the plan provides that:

> [T]he Plan Administrator shall have the discretionary authority and responsibility to:
>
> 5.1.2 grant or deny Employee's claim for Benefits under the Plan;
>
> \* \* \* \* \* \*
>
> 5.1.5 decide such questions as may arise in connection with the Plan including, but not limited to, *questions concerning the eligibility of any Employee to participate in or receive Benefits under the Plan;*
>
> \* \* \* \* \* \*
>
> 5.1.9 interpret and construe the provisions of the Plan and to resolve ambiguities, inconsistencies and omissions therein . . . .

BMS STD Plan § 5.1; BMS LTD Plan § 5.1 (emphasis added). Because it is clear that BMS/Matrix gave itself "discretionary authority" to determine if Jaeger was eligible or not, the Court must review the denial of benefits under the "arbitrary and capricious" or "abuse of discretion" standard.

The denial of Jaeger's claims by BMS/Matrix was not an "abuse of discretion," and is supported by ample evidence. First, Jaeger was employed by Olsten/Adecco, not BMS/Matrix, when she became disabled. Indeed, she was actually eligible to receive benefits through Olsten/Adecco. Second, BMS sold Matrix to L'Oreal on July 10, 2000, eleven days prior to Jaeger's last day of work and prior to Jaeger's announcement that she did not intend to continue to work. Third, Jaeger did not fit within the plans' definitions of "employee" because she was not a "regular, full-time employee of the Employer [BMS] actively working a regularly scheduled workweek of at least 25 hours immediately prior to becoming 'Disabled' under the Short Term Disability Plan, as defined therein." [7] BMS LTD Plan § 1.8. Again, Jaeger did not even work for BMS for the five months prior to becoming disabled, and even when she did perform services for BMS, she *never* worked a *"regularly scheduled workweek"* as she was always free to come and go from work as she pleased. Finally, as mentioned above, the Plan Administrator did not abuse his discretion because Jaeger was explicitly excluded from eligibility under BMS's plans because BMS did not treat her as an employee for federal income and employment tax purposes. BMS STD Plan § 2.1.2; BMS LTD Plan § 2.1.2.

Jaeger's reliance on *Vizcaino v. Microsoft Corp.,* 120 F.3d 1006 (9th Cir.1997), is misplaced. In *Vizcaino,* Microsoft hired computer programmers who entered into signed independent contractor agreements without eligibility for benefits. *Id.* at 1010. The Microsoft ERISA plan, however, defined an eligible employee as "any common

---

dent contractors for tax purposes (and obtain the tax benefits attendant thereto) *shall* be eligible for benefits. Absent such language, the Court is not inclined to find the existence of a "conflict" within the meaning of the authorities upon which Jaeger relies. Because there is no conflict, the Court will be governed by the plan itself.

**7.** BMS's Short Term Disability Plan simply defines an employee as "a regular, full-time employee of the Employer actively working a regularly scheduled workweek of at least 25 hours." BMS STD Plan § 1.7.

law employee ... who is on the United States payroll of the employer." *Id.* In 1989 and 1990, when the Internal Revenue Service audited Microsoft's records and determined that the independent contractors were actually common law employees, Microsoft agreed and made various corrective efforts, including issuing W–2 forms and paying the employer's share of FICA taxes to the government. *Id.* at 1008. So, in *Vizcaino*, the employer both admitted that the individuals were improperly classified as independent contractors and should have been classified as common law employees, and the employer had a provision in its plan that all common law employees on its payroll were eligible for ERISA benefits. In this case, however, BMS/Matrix has denied that Jaeger is a common law employee, and the provision in its plans, contrary to Microsoft's, actually state that employees who were not treated as employees for tax purposes are not to be covered "even if it is subsequently determined by a court or the Internal Revenue Service that such individuals should be, or should have been, properly classified as common law employees of the Employer." BMS STD Plan § 2.1.2; BMS LTD Plan § 2.1.2.[8]

As Jaeger has failed to exhaust the administrative remedies available to her, would be excluded from the terms of BMS/Matrix's plan, and did not fit within BMS/Matrix's plan definition of "employee," the Court **GRANTS** Defendant BMS/Matrix's motion for summary judgment on Count Two.

### C. Count Four—Jaeger Is Not Eligible Under L'Oreal's Benefit Plans

 Susan Jaeger's claim that she is an "eligible participant" in L'Oreal/Ma-

trix's various benefit plans also fails on several grounds. Jaeger has again failed to exhaust the administrative remedies available to her through L'Oreal. Potter's letter to Vogel on October 24, 2000 is far from an attempt to commence the administrative process, and there is no evidence of any prior effort by Jaeger or her attorneys to commence that process. An attorney's letter is insufficient to exhaust the required administrative process if it is "not an attempt to jump start administrative proceedings," but is, instead, a threat to take the former employer to court if the matter is not settled. *Powell v. AT & T Communications, Inc.*, 938 F.2d 823, 827 (7th Cir.1991) (citing 29 C.F.R. § 2560.503–1(d)). An attorney's letter on behalf a client who is a former employee "must be reasonably calculated to alert the employer to the nature of the claim and request administrative review." *Id.* Potter's October 24, 2000 letter does not meet this requirement. Though it may be true that, in some circumstances, a court could reasonably find that an employee had been actively dissuaded by a company from initiating administrative proceedings, such a finding would not be reasonable where, as here, the individual in question is represented by counsel and concedes that she had the benefit plan documents at the time she made her initial inquiries to the company.

The Court, moreover, finds it indisputable that Jaeger was never an employee of L'Oreal/Matrix. When L'Oreal bought Matrix from BMS on July 10, 2000, only BMS/Matrix's *employees* became covered by L'Oreal's plans. At that time, however, Jaeger was an employee of Olsten/Adecco, as she had been for five months. Jaeger

---

**8.** Despite Jaeger's argument to the contrary, the fact that an employee's tax treatment is only one of several *Darden* factors is irrelevant to the question of eligibility under a benefits plan where the express terms of the plan itself define eligibility by reference to tax status. Jaeger confuses two *independent* inquiries.

submitted her time sheets to Olsten/Adecco, not to L'Oreal/Matrix. Jaeger received her W-2 form from Olsten/Adecco—she never received any IRS forms from L'Oreal/Matrix. Jaeger was paid by Olsten/Adecco. And, in fact, Jaeger was eligible at that point for benefits through Olsten/Adecco. Jaeger's bare assertion that she was an employee of L'Oreal/Matrix is simply not supported by any of the facts in the record. Because the Court concludes she was not an employee of BMS/Matrix at the time L'Oreal purchased Matrix, and did not become such an employee afterwards, Jaeger was not covered by L'Oreal/Matrix's benefit plans.[9]

Even if the Court were to ignore the overwhelming evidence that Jaeger worked for Olsten/Adecco and conclude that her employer was L'Oreal/Matrix, the plain terms of L'Oreal/Matrix's plan exclude Jaeger from eligibility. L'Oreal/Matrix's ERISA benefits are limited to "full-time" employees. Both the Short Term Disability Plan and Long Term Disability Plan define "full-time" employees as individuals working not less than thirty hours per week.[10] Exh. G, Tab B in Appendix to Defendants' Motion for Summary Judgment—L'Oreal Short Term Disability Plan, p. 6 & L'Oreal Long Term Disability Plans 1 & 2, pp. 2, 10. The Court finds it to be indisputable that Jaeger did not work thirty hours in a single week after L'Oreal purchased Matrix from BMS.[11] During the week of July 10, 2000, Jaeger worked 29.50 hours and during the week of July 17, 2000, Jaeger worked 24.75 hours. Even before L'Oreal purchased Matrix from BMS, Jaeger only worked thirty or more hours two out of the previous seven weeks. Since Jaeger did not establish a

---

**9.** The Court's conclusion that she was not an employee of L'Oreal/Matrix would apply with equal force and for the same reasons to at least the last five months of Jaeger's relationship with BMS/Matrix. As noted above, however, the Court declines to conduct a full *Darden* analysis with respect to the entire term of Jaeger's affiliation with BMS/Matrix; it is simply unnecessary to do so in light of the Court's other conclusions as to Jaeger's eligibility for benefits under the BMS plans.

**10.** Jaeger argues that, because eligibility requirements in the summary plan descriptions ("SPD") in L'Oreal/Cosmair's employee handbook conflict with these definitions, the SPD language must govern. The Court disagrees with Jaeger's characterization of the facts. The eligibility requirements in the SPD of L'Oreal/Cosmair's long term disability plan specifically exclude individuals in Jaeger's situation because "[s]easonal employees and employees who work less than 30 hours per week are not considered full time employees." Exh. G, Tab D in Appendix to Defendants' Motion for Summary Judgment—L'Oreal/Cosmair Employee Handbook, Long Term Disability Summary Plan Description, p. 2. The SPD of Cosmair's short term disability plan, a couple of pages earlier in the handbook, limits coverage to "regular full-time employees," but does not define this term. *Id.*—L'Oreal/Cosmair Employee Handbook, Short Term Disability Summary Plan Description, p. 1. Jaeger also argues that the definition of eligible employee that L'Oreal favors is "buried in the Cosmair, Inc. Employee Retirement Savings Plan and Trust Agreement." *Id.*, Tab C. While L'Oreal does point to this definition, it also points to those in the description of both plans in L'Oreal's Group Contract & Booklets document (cited above), a document that clearly specifies eligibility in an easy-to-understand, question-and-answer format. After considering all of the documents provided, the Court concludes that the summary plan descriptions do not conflict with the terms of the plans themselves.

**11.** Jaeger contends that, despite billing Olsten/Adecco for 29.50 hours the week of July 10, 2000, she actually was present at work for 31.00 hours. The terms of L'Oreal/Matrix's disability plans, however, require the employee to *work* for not less than thirty hours per week. Even assuming that Jaeger was physically present at the L'Oreal/Matrix facility for 31.00 hours, mere presence at the facility does not satisfy this requirement. The Court will not overlook the fact that Jaeger billed 29.50 hours that week.

pattern of working thirty or more hours per week, she could not be a "full-time" employee as defined by L'Oreal/Matrix's ERISA benefit plan and, thus, also would be excluded from eligibility under that plan on this ground.

Finally, Jaeger also is excluded by the plain terms of the plan on other grounds. Specifically, the plan excludes "any individual for whom the Employer does not report wages on Form W–2." Exh. G, Tab A in Appendix to Defendants' Motion for Summary Judgment—Cosmair Pension Plan, Art. III, § 3.4 & App. B. Since Jaeger did not receive a W–2 form from L'Oreal/Matrix, but, instead, received her W–2 from Olsten/Adecco, she is also excluded from eligibility under the L'Oreal/Matrix's ERISA plan for this reason.

As Jaeger has failed to exhaust the administrative remedies available to her, was not a L'Oreal/Matrix employee, and was excluded from eligibility by the plain terms of L'Oreal/Matrix's plan, the Court **GRANTS** Defendant L'Oreal/Matrix's motion for summary judgment on Count Four.

### D. Count Three—Statutory Penalties Are Not Appropriate

Lastly, Jaeger contends in Count Three that statutory penalties should be imposed against BMS and L'Oreal for their failure to provide plan documents pursuant to 29 U.S.C. §§ 1024(b)(4) & 1132(c).

In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court considered when, and to whom, a plan administrator must provide copies of a benefit plan. The language of 29 U.S.C. § 1024(b)(4) requires an administrator to provide copies, upon written request, of prescribed documents to a participant or beneficiary of the plan. A "participant" is defined by statute to mean

any employee or former employee of an employer, or any member of former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). In considering the meaning of the term "participant," the Court concluded that a " 'participant' is naturally read to mean either 'employees in, or reasonably expected to be in, currently covered employment,' or former employees who 'have ... a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." *Firestone,* 489 U.S. at 117, 109 S.Ct. 948 (citations omitted). Likewise, the Court determined that "[i]n order to establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Id.* at 117–18, 109 S.Ct. 948.

An administrator who fails to provide such documents within thirty days of a request "may in the court's discretion be personally liable to such a participant ... in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c). The decision to impose such a penalty is plainly within the discretion of the Court. *Hiney Printing Co. v. Brantner,* 243 F.3d 956, 960 (6th Cir.2001). Sanctions are, thus, not automatically awarded whenever a plan administrator fails to provide copies of plan documents to an individual requesting them. Rather, the statutory award is "punitive and designed to induce or compel disclosure of information required under ERISA." *Guzy v.*

*Ameritech Corp.,* 50 F.Supp.2d 706, 715 (E.D.Mich.1999) (declining to award penalties where plaintiff's counsel sent a request for documents to the wrong individual and no showing of prejudice was made).

Under the circumstances present in this case, and even assuming that Jaeger properly requested such documents in writing, the Court finds that the award of statutory penalties is not warranted against either BMS or L'Oreal. Given that Jaeger clearly was not eligible for any of the benefit plans, the Court cannot say that the plan administrators' decisions to not provide plan documents was in error. If the situation was not so clear-cut, the Court might be inclined to find otherwise. But, in these circumstances, the Court concludes that the imposition of a penalty pursuant to 29 U.S.C. § 1132(c) would not further the purposes behind such a penalty.

## IV. Jaeger's Cross–Motion For Summary Judgment Is, Likewise, Denied

Given the Court's conclusions above, Jaeger's cross-motion for summary judgment must be denied. Jaeger's first argues that she was an eligible participant of the ERISA plans available to her from Defendants Matrix, BMS, and L'Oreal. This argument fails. As the Court has already decided, Jaeger failed to exhaust her administrative remedies, was not eligible under the terms of the plans, and was specifically excluded from the plans of both BMS and L'Oreal. Jaeger's second argument that she was a common-law employee at all relevant times likewise fails. As the Court earlier mentioned, based on the two-prong analysis of *Wolf,* the Court need not decide whether Jaeger was a common law employee of BMS because Jaeger was not eligible to receive benefits according to the terms of BMS's plan. And, the Court specifically finds that Jaeger was not an employee of L'Oreal at any time, under the *Darden* test or otherwise. Finally, Jaeger's third argument that a L'Oreal employee prevented Jaeger from pursuing her claims, failed to provide her with the necessary information, and failed to forward her request to the plan administrator provides no grounds for relief either. As the Court already determined, Jaeger failed to exhaust the administrative remedies available to her as she is required to do prior to commencing suit and was not eligible for those benefits in any event. Given the Court's prior determinations and for the reasons stated above, the Court **DENIES** Plaintiff Susan Jaeger's motion for summary judgment.

## V. Conclusion

For the reasons described above, this Court **GRANTS** Defendant BMS's motion for summary judgment and **GRANTS** Defendant L'Oreal/Matrix's motion for summary judgment. The Court also **DENIES** Plaintiff Susan Jaeger's motion for summary judgment. The case, therefore, is dismissed.

**IT IS SO ORDERED.**